**ETHANOL PARTNERS ACCREDITED, et al.**

v.

**WIENER, ZUCKERBROT, WEISS & BRECHER, et al.**

**Civ. A. No. 84–6408.**

United States District Court, E.D. Pennsylvania.

June 27, 1985.

Henry H. Janssen, Philadelphia, Pa., for plaintiffs.

Peter J. Taylor, Pittsburgh, Pa., for Carl E. Wright & Wright, Herfordt & Sanders.

Abraham C. Reich, Philadelphia, Pa., for Linde, Thomson, Fairchild, Langworthy, Kohn & Van Dyke, P.C., & James O. Selzer.

Lloyd R. Ziff, Philadelphia, Pa., for John P. Redd & J. Michael Redd.

Ira P. Tiger, Philadelphia, Pa., for Mormac Ltd., Henry McDonald.

James M. Kaplan, New York City, for Harold E. Card, Raymond Jallow and Ira Palmer and William Palmer.

## MEMORANDUM AND ORDER NO. I

JAMES McGIRR KELLY, District Judge.

Presently before this court is a motion to dismiss for failure to state a claim filed by Carl E. Wright and Wright, Herfordt & Sanders (WHS), a partnership engaged in public accounting. Defendants here rely upon Fed.R.Civ.P. 12(b)(6) for authority for their motion. Additionally, defendants here argue that this court does not have personal jurisdiction over them, therefore, the court must dismiss pursuant to Fed.R. Civ.P. 12(b)(2).

The plaintiffs have alleged several securities violations, a Racketeer Influenced and Corrupt Organization Act violation (RICO) 18 U.S.C. § 1961, *et seq.*, and several state securities violations. Plaintiffs, two limited partnership organizations,[1] sought the purchase of various investments. In seeking investments plaintiffs purchased six ethanol manufacturing facilities on a "turn key" basis, with management of the facilities being provided for by the seller Midwestern Companies, Inc. (Midwestern) and its subsidiaries. Defendant Carl Wright, besides being the senior partner of WHS was also an officer and director of Midwestern. Plaintiffs, once the ethanol plants were purchased, sold limited partnership interests to investors.

In count I, plaintiffs assert that defendants here used "manipulative and deceptive devices or contrivances which were designed to, and had the effect of generating and receiving millions of dollars in the limited partners' investments in the ethanol plants ...." Plaintiffs contend that: defendants misrepresented the completion time for the plants to be operational; the defendants misrepresented the total assets in place at each ethanol plant; defendants misrepresented the financial integrity of Midwestern and its ability to construct the plants; defendants misrepresented the fact that a performance bond was secured when in fact no bond had been secured; and defendants misrepresented projected revenues, expenses, cash flows and tax advantages of the ethanol plants. Plaintiffs allege that the defendants WHS and Carl Wright acted in concert with various other individuals, corporations, and partnerships (all of which are defendants in this action) who were involved in other aspects of the transaction of buying the ethanol plants and/or selling the limited partnership interests by plaintiffs.

Plaintiffs in count I of their complaint seek relief pursuant to the Security Act of 1933 (SA) § 17(a), 15 U.S.C. § 77q(a) (1981) which states:

**§ 77q. Fraudulent interstate transactions**

**Use of interstate commerce for purpose of fraud or deceit**

(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

---

**1.** Ethanol Partners Accredited; Ethanol Energy Partners.

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

Defendants here contend that a private cause of action does not lie from SA § 17(a), *supra.* I ruled in *Markovich v. Vasad Corp.*, 617 F.Supp. 142, 145–146 (E.D.Pa. Feb. 21, 1985) that SA § 17(a) does not support a private cause of action. Plaintiffs believe that the Supreme Court's opinion in *Herman & MacLean v. Huddleston*, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983) requires a contrary result. However, the *Huddleston* Court was confronted with different questions, namely whether an implied cause of action under the Security and Exchange Act of 1934 (SEA) § 10(b) will lie for conduct subject to an express civil remedy under the SA § 11, and if the implied action does lie, what is the applicable standard of proof required. For the many reasons Judge Giles set out in *Kimmel v. Peterson*, 565 F.Supp. 476 (E.D.Pa.1983) and for the reasons I set out in *Markovich*, I do not find the Supreme Court's opinion in *Huddleston* controlling here. Accordingly, a private cause of action will not lie under SA § 17(a). Plaintiffs' action to the extent it relies upon SA § 17(a) must be dismissed. However, to the degree plaintiffs rely upon SA § 12(2), 15 U.S.C. § 77l(2) (1981) and SEA § 10(b), 15 U.S.C. § 78j(b) (1981) and Rule 10b–5, 17 C.F.R. 240.10b–5 (1984) promulgated thereunder, count I is a viable claim since a private cause of action is permissible under these sections.[2] Moreover, defendants here do not seek dismissal of these claims. Accordingly, count I will not be dismissed as to plaintiffs' claims which rely upon SA § 12(2), SEA § 10(b), and Rule 10b–5.

---

**2.** 15 U.S.C. § 77l(2) states in pertinent part:
**Civil liabilities arising in connection with prospectuses and communications**
Any person who—

\* \* \* \* \* \*

(2) offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraph (2) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.
15 U.S.C. § 78j(b) states in pertinent part:
**Manipulative and deceptive devices**
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\* \* \* \* \* \*

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
17 C.F.R. 240.10b–5 states in pertinent part:
**Employment of manipulative and deceptive devices.**
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

■ In count I of the complaint plaintiffs couch a claim upon SA § 15, 15 U.S.C. § 77o and SEA § 20(a) & (b), 15 U.S.C. 78t(a) & (b).[3] In alleging a claim based upon SA § 15 and SEA § 20(a) & (b), plaintiffs contend that defendants here have exercised control over other defendants in this action, who have violated SA § 12, 15 U.S.C. 77l (1981). Because the Federal Rules of Civil Procedure only require notice pleadings, I find that plaintiffs have given sufficient notice to the defendants here; whether or not defendants here exercised control is a factual question which cannot be resolved on a Fed.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim.

If plaintiffs can establish, *inter alia,* that defendant here sufficiently controlled or had influence over other defendants in this action who violated either SA §§ 11 or 12, 15 U.S.C. §§ 77k, 77l or those acts which are covered under SEA § 20, 15 U.S.C. § 78t, *cf. Sharp v. Cooper & Lybrand,* 649 F.2d 175 (3d Cir.1981), *cert. denied,* 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982) (The court recognized certain limited situations where an accounting firm may be liable to parties who are persuaded and rely upon their advice) then plaintiffs will be entitled to recover. For all these reasons, I cannot dismiss in total count I of plaintiffs' complaint.

■ I turn next to count II of plaintiffs' complaint, in which they allege a claim under RICO, 18 U.S.C. § 1964; however, plaintiffs fail to allege that defendants here have been convicted of the requisite predicate acts. Conviction of predicate acts are a prerequisite to stating a claim for civil relief under RICO. *Sedima S.P. R.L. v. Imrex Company, Inc.,* 741 F.2d 482 (2d Cir.1984) *cert. granted,* — U.S. —, 105 S.Ct. 901, 83 L.Ed.2d 917 (1985); *Viola v. Bensalem Township,* 601 F.Supp. 1086 (E.D.Pa.1984). Without more discussion, I will dismiss count II of plaintiffs' complaint against these defendants.[4]

Defendants here do not seek dismissal of counts III through IX of plaintiffs complaint. Accordingly, I will not evaluate the allegations for adequateness of stating a claim, *sua sponte.*

■ Turning to count X of plaintiffs' complaint, defendants seek dismissal because they assert that plaintiffs failed to "plead fraud with particularity" and thus contra to Fed.R.Civ.P. 9(b). In count X plaintiffs allege that defendants here completed the statements of revenues and statements of cash flow for the ethanol plants in a perfunctory manner, notwithstanding the fact that defendants here knew that plaintiffs would rely upon the

---

**3.** SA § 15 was incorrectly cited as 15 U.S.C. § 78o in plaintiffs' complaint, which correctly cited is 15 U.S.C. § 77o (1981) which states:.

**Liability of controlling persons**

Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77l of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

15 U.S.C. § 78t states in pertinent part:

**Liability of controlling persons**

**Joint and several liability; good faith defense**

(a) Every person, who directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

**Unlawful activity through or by means of any other person**

(b) It shall be unlawful for any person, directly or indirectly, to do any act or thing which it would be unlawful for such person to do under the provisions of this chapter or any rule or regulation thereunder through or by means of any other person.

**4.** *See* Batista, *The Uses and Misuses of RICO in Civil Litigation: A Guide for Plaintiffs and Defendants.* 8 Del.J. Corp.L. 181 (1983).

schedules in making their decisions. Moreover, plaintiffs contend that defendants here negligently relied upon representations and assumptions from other defendants in this action in rendering their opinion. I do not read count X of plaintiffs' complaint as alleging fraud, but rather find count X alleges a breach of a duty, namely negligence and gross negligence. Accordingly, I find that count X has been sufficiently pleaded in accordance with Fed.R. Civ.P. 8, and that Fed.R.Civ.P. 9(b) is inapplicable to count X.

■ Last, I address defendants' assertion that this court does not have jurisdiction over them. Defendants claim that they do not have agents within the Commonwealth of Pennsylvania, nor do they conduct business within the Commonwealth. Defendants here assert that they reside and conduct their business in Missouri. The SA and the SEA each provides for nationwide service of process and further each provides for jurisdiction in any district court. The SA § 22, 15 U.S.C. § 77v (1981) states in pertinent part:

### § 77v. Jurisdiction of offenses and suits

(a) The district courts of the United States, ..., shall have jurisdiction of offenses and violations under this subchapter and under the rules and regulations promulgated by the Commission in respect thereto, and, concurrent with State and Territorial courts, of all suits in equity and actions at law brought to enforce any liability or duty created by this subchapter. Any such suit or action may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found....

The SEA § 27, 15 U.S.C. § 78aa (1981) states in pertinent part:

### § 78aa. Jurisdiction of offenses and suits

The district courts of the United States, ... shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder.... Any suit or action to enforce any liability or duty created by this chapter or rules or regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found....

While both SA § 22 and SEA § 27 have a venue provision, the question remains whether or not some due process requirement under the fifth amendment,[5] prohibits this court from exercising jurisdiction over the defendants here. *Cf. GRM v. Equine Investment and Management Group*, 596 F.Supp. 307 (S.D.Tx.1984) (the court held that the SEA § 27 provides not only for venue, but also personal jurisdiction; however, due process must not be offended). In *Fitzsimmons v. Barton*, 589 F.2d 330, 333–334 (7th Cir.1979) the court stated:

It is clear, therefore, that the 'fairness'[6] standard imposed by *Shaffer* relates to the fairness of the exercise of power by a particular sovereign, not the

---

5. Since the matter before me is an arising under matter, namely SA and SEA, the due process clause of the fifth amendment is applicable rather than the fourteenth amendment due process clause which is applicable when a state court or a district court, when jurisdiction relies on diversity of the parties, seeks to exercise personal jurisdiction of various parties.

6. The court refers to *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) which held that Due Process limitations reflected "traditional notions of fair play and substantial justice" rather than a purely territorial analysis.

fairness of imposing the burdens of litigating in a distant forum. Applying this standard of fairness, it is clear that this instance of personal service satisfies Due Process. Here the sovereign is the United States, and there can be no question but that the defendant, a resident citizen of the United States, has sufficient contacts with the United States to support the fairness of the exercise of jurisdiction over him by a United States court.

This analysis and conclusion has been well established since *United States v. Union Pacific R.R.*, 98 U.S. 569 [8 Otto 569], 25 L.Ed. 143 (1878). There the Supreme Court, in upholding the *in personam* jurisdiction of a circuit court in a federal action against parties residing outside the state in which the circuit court sat, noted:

> The jurisdiction of the Supreme Court and the Court of Claims is not confined by geographical boundaries. Each of them, having by the law of its organization jurisdiction of the subject matter of a suit, and of the parties thereto, can, sitting at Washington, exercise its power by appropriate process, served anywhere within the limits of the territory over which the federal government exercises dominion.
>
> *   *   *   *   *   *
>
> There is, therefore, nothing in the Constitution which forbids Congress to enact that, as to a class of cases or a case of special character, a circuit court-any circuit court-in which the suit may be brought, shall, by process served anywhere in the United States, have the power to bring before it all the parties necessary to its decision.

*Id.* at 603–04.[3] This conclusion has been specifically applied to uphold the validity of nationwide service of process under § 27 of the 1934 Securities Exchange Act.[4] In *Mariash v. Morrill*, 496 F.2d 1138 (2d Cir.1974), the Second Circuit upheld under § 27 the jurisdiction of a federal district court in New York over defendants served in Massachusetts stating:

> [W]here, as here, the defendants reside within the territorial boundaries of the United States, the 'minimal contacts', required to justify the federal government's exercise of power over them, are present. Indeed, the 'minimal contacts' principle does not, in our view, seem particularly relevant in evaluating the constitutionality of in personam jurisdiction based on nationwide, but *not* extraterritorial, service of process. It is only the latter, quite simply, which even raises a question of the forum's power to assert control over the defendant.

[3] This proposition has been frequently reiterated by the Supreme Court. *See Mississippi Publishing Co. v. Murphree*, 326 U.S. 438, 442, 66 S.Ct. 242 [244], 90 L.Ed. 185 (1946); *Robertson v. Railroad Labor Board*, 268 U.S. 619, 622, 45 S.Ct. 621 [622], 69 L.Ed. 1119 (1925).

[4] *Mariash v. Morrill*, 496 F.2d 1138 (2d Cir. 1974); *International Controls Corp. v. Vesco*, 490 F.2d 1334 (2d Cir.1974), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 758 (1978) (by implication); *Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326, 1340 (2d Cir.1972).

The defendant's citation of *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974 (2d Cir.), *cert. denied*, 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975), in opposition to this position is completely mistaken. The passages cited by defendant, *id.* at 998–1000, relating to minimum contacts of a defendant, refer to minimum contacts of a Canadian defendant served in Canada. Service beyond the bounds of the territorial United States obviously raises questions as to the contact of the defendant with the United States, questions that are absent when a United States citizen is served within the country.

*Id.* at 1143 (emphasis in original). (Some footnotes omitted). Because the action was under the SEA, thus arising under a federal statute, the *Fitzsimmons* court had subject matter jurisdiction. The fact that the SEA provided for nationwide service of process coupled with the fact that defendant had minimum contacts with the United States, fifth amendment Due Process was not violated by exercising personal jurisdiction over the defendant.

In *Oxford First Corp. v. PNC Liquidating Corp.*, 372 F.Supp. 191 (E.D.Pa.1974) the district court held that fifth amendment Due Process not only required nationwide service of process where a federal statute

was the basis of the claim, but also required a five step analysis to determine the "fairness" of exercising personal jurisdiction over the objecting defendant. Thus, the court held:

> The fairness test which we will apply includes consideration of the following matters: *First,* a court should determine the extent of the defendant's contacts with the place where the action was brought; i.e., the *International Shoe* type criteria. *Second,* a court should weigh the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business. Subsidiary considerations here might include the nature and extent and interstate character of the defendant's business, the defendant's access to counsel, and the distance from the defendant of the place where the action was brought. *Third,* the matter of judicial economy should be evaluated. In particular, a court should gauge: (a) the potentiality and extent of any adverse impact upon the litigation that may result from having a part of the action sheared off; and (b) the prospect of duplication of effort by counsel and the courts in conducting two parts of the same lawsuit in different jurisdictions at the same time. As a barometer of the potential scope of the litigation in this regard, a court should also examine whether the case might involve a class action including far flung plaintiffs or defendants. *Fourth,* a court should consider the probable situs of the discovery proceedings in the case and the extent to which the discovery proceedings will, in any event, take place outside the state of defendant's residence or place of business, thus muting the significance of his claim that he is inconvenienced by the distant forum. *Fifth,* a court should examine the nature of the regulated activity in question and the extent of impact that defendant's activities have beyond the borders of his state of residence or business.

*Id.* at 203–204.

The district court in *Oxford, supra,* would require more than the Court of Appeals for the Seventh Circuit did in *Fitzsimmons.* Moreover, the court in *Fitzsimmons, supra,* specifically rejected the five step analysis to evaluate fairness which the *Oxford* court enunciated. *Fitzsimmons,* 589 F.2d at 334–335 (7th Cir.1979). Rather, the *Fitzsimmons* court held that these five factors are more appropriately reviewed on a motion for change of venue because of *forum non conveniens. Id.* In *Staffin v. Greenberg,* 509 F.Supp. 825 (E.D.Pa.1981) the court stated:

> [T]hat when a federal court exercises jurisdiction pursuant to a federal statute, it is the United States and not the particular state in which the court is located that is exercising jurisdiction and, therefore, all that is necessary to satisfy Due Process is that the defendants have minimum contacts with the United States.

*Id.* at 831 (citations omitted).

■ I find the logic of the Seventh Circuit's holding in *Fitzsimmons* persuasive. In accord with *Fitzsimmons* and *Staffin,* because the action here is brought under a federal statute which provides for nationwide service of process, I hold that this court has personal jurisdiction over the defendants here. Because judicial economy will be afforded if the state claims are litigated with the federal claims, since the claims arise out of the same nucleus of operative facts, I find it judicially prudent to exercise jurisdiction over plaintiffs' state related claims here. Additionally, because I find that this court has jurisdiction over the defendants here for the federal claims, and since the state claims arise out of the same nucleus of operative facts, I find that this court has personal jurisdiction over the defendants here for the state related claims. *See GRM v. Equine Investment and Management Group,* 596 F.Supp. at 311 (S.D.Tex.1984) (The SEA personal jurisdiction provision permits the court to exercise jurisdiction over pendent state claims.)

In conclusion, count I, to the extent that plaintiffs rely upon SA § 17, 15 U.S.C. § 77q must be dismissed since SA § 17 cannot support a private cause of action,

however, to the degree that count I relies upon SA § 12(2), 15 U.S.C. § 77*l* (2) (1981) and SEA § 10(b), 15 U.S.C. § 78j(b) (1981) and Rule 10b–5, 17 C.F.R. 240.10b–5 (1984) and SA § 15, 15 U.S.C. § 77*o* and SEA § 20(a) & (b), 15 U.S.C. § 78t(a) & (b), plaintiffs state a cause of action. Count II must be dismissed since plaintiffs fail to allege the requisite conviction of the predicate acts. Count X has been pleaded adequately. And finally, defendants' allegations that this court does not have personal jurisdiction, while presenting an interesting question, I find that this court does have jurisdiction over defendants here.