**CALDWELL–BAKER COMPANY,
et al., Plaintiffs,**

v.

**SOUTHERN ILLINOIS RAILCAR
COMPANY., et al.,
Defendants.**

Civil Action No. 00–2380–CM.

United States District Court,
D. Kansas.

June 18, 2002.

Linus L. Baker, Gardner, KS, for Plaintiffs.

Philip R. Dupont, Gregory J. Minana, Blackwell, Sanders, Peper, Martin, LLP, Kansas City, MO, Rick E. Frawley, Kutak Rock LLP, Kansas City, MO, for Defendants.

## MEMORANDUM AND ORDER

MURGUIA, District Court Judge.

This matter is before the court on defendant DeBruce Grain, Inc.'s Motion to Dismiss or for Summary Judgment (Doc. 270), defendant General Mills's Motion to Dismiss (Doc. 303) and Motion for Summary Judgment (Doc. 365), defendant Michele Seiberlich's Motion to Dismiss (Doc. 335), defendant Southern Illinois Railcar Company, L.L.C.'s Motion to Dismiss (Doc. 337), and defendants Fred L. Parsons, Kurt E. Johnson, and Gary J. Goodman's Motion to Dismiss (Doc. 339). Also pending are plaintiffs' Motion to Strike Defendant DeBruce's Reply to Plaintiffs' Response to DeBruce's Motion to Dismiss (Doc. 298) and plaintiffs' Motion to Strike Defendant DeBruce's Reply to Plaintiffs' Response to DeBruce's Motion for Summary Judgment (Doc. 299). Finally, plaintiffs' Motion for Partial Summary Judgment (Doc. 14) against defendant Southern Illinois Railcar Company, and two of plaintiffs' Motions to Strike (Docs. 378 and 381) are pending.

As set forth below, defendants DeBruce Grain, Inc., General Mills, Michele Seiberlich, Fred L. Parsons, Kurt E. Johnson, and Gary J. Goodman's motions to dismiss are granted. Plaintiffs' motions to strike as against defendant DeBruce are denied. Plaintiffs' motion for partial summary judgment and motions to strike as against defendant Southern Illinois Railcar Co. are denied as moot without prejudice to be reasserted, if at all, only if and when the bankruptcy court allows plaintiffs to continue to pursue their claims against defendant Southern Illinois Railcar Co.

## I. Facts[1]

Plaintiffs Caldwell–Baker Co. ("Caldwell–Baker"), The Baker Group, L.C., and Carle E. Baker, Jr., as Trustee of the MTY Profit Sharing Plan and Trust ("MTY") allege several causes of action arising out of plaintiff Caldwell–Baker's agreement with defendant Southern Illinois Railcar Co. ("SIRC"), an Illinois corporation, to lease several hundred railcars partially owned by plaintiff Caldwell–Baker to SIRC.[2] Plaintiffs The Baker Group, L.C., and MTY are co-owners of the railcars. Defendants DeBruce Grain, Inc. ("DeBruce") and General Mills are sublessees of the railcars pursuant to separate lease agreements they entered into with SIRC. Defendant Southern Illinois Railcar Co., L.L.C., ("SIRC LLC") is an Illinois limited liability company. Defendant Seiberlich is defendant SIRC's Vice President of Sales and Operations. Defendant Parsons is defendant SIRC's President. Defendant Johnson is defendant SIRC's Executive Vice President and General Counsel. Defendant Goodman is defendant SIRC's Chief Financial Officer.

---

1. All facts are uncontroverted and viewed in the light most favorable to the nonmoving party.

2. Defendant SIRC filed a notice of bankruptcy in this case indicating that an automatic stay is in effect pursuant to 11 U.S.C. § 362, which prohibits continuing any proceedings against defendant SIRC (Doc. 445). Accordingly, Plaintiffs' Motion for Partial Summary Judgment (Doc. 14) against defendant SIRC, and two of plaintiffs' Motions to Strike (Docs. 378 and 381), are denied as moot without prejudice to be reasserted, if at all, only if and when the bankruptcy court allows plaintiffs to continue to pursue their claims against defendant SIRC.

Defendant DeBruce entered into a Railcar Lease Agreement with defendant SIRC, effective June 17, 1996, in which defendant DeBruce agreed to lease cars which SIRC was "the owner of, agent for the owner of, or lessee." Plaintiff Caldwell–Baker is not named in and was not a signatory to the SIRC/DeBruce lease.

Plaintiff Caldwell–Baker entered into a Railcar Lease with defendant SIRC, effective August 29, 1997. Defendant DeBruce is not named in and was not a signatory to the Caldwell–Baker/SIRC lease. Under the lease, defendant SIRC was to pay plaintiff Caldwell–Baker $400 per month per railcar. The lease further stated that the cars were to be used only to transport grain products and could not be used to transport corrosive chemicals, including fertilizers. Among other terms of the lease, defendant SIRC was permitted to sublease the cars if it provided prior notice to plaintiff Caldwell–Baker. Plaintiffs contend the lease required defendant SIRC to provide information concerning defendant SIRC's financial condition.

After it encountered cash flow problems, defendant SIRC ceased making lease payments to plaintiffs. Plaintiffs also claim to have discovered that cars subleased by defendant SIRC were being used to carry corrosive substances. Plaintiffs state that they notified defendant SIRC of these alleged breaches of the lease agreement and that defendant SIRC took no steps to cure them. Plaintiffs' Second Amended Complaint sets forth numerous causes of action against SIRC.

With respect to defendant DeBruce, plaintiffs' Second Amended Complaint alleges that defendant DeBruce agreed in its lease with defendant SIRC to become a joint obligor with SIRC under the terms of the Caldwell–Baker/SIRC lease. Plaintiffs further state that they are third party beneficiaries of the SIRC/DeBruce lease.

Plaintiffs state that defendant DeBruce agreed in the SIRC/DeBruce lease to become bound by the terms of the Caldwell–Baker/SIRC lease. In addition, plaintiffs claim defendant DeBruce failed to fulfill the following duties under the SIRC/DeBruce lease: (1) to indemnify, defend, and hold harmless plaintiff Caldwell–Baker and any owner of the cars from certain obligations; (2) to name plaintiff Caldwell–Baker and any owner of the cars as insureds; (3) to maintain and repair certain "Lessee Maintenance Items" on the subleased cars; (4) to return the cars free of certain damage; (5) that "[t]he Lessee's duties under the Lease were not performed by DeBruce as set forth in CBC's Complaint against SIRC." Plaintiffs seek monetary damages, including attorney's fees. Further, plaintiffs request the court to enter a declaratory judgment that defendant DeBruce is obligated to indemnify plaintiffs and defendant SIRC for claims arising out of the Caldwell–Baker/SIRC lease and the SIRC/DeBruce lease.

Plaintiffs' Second Amended Complaint does not allege that any insurance claims were made by plaintiffs and were not covered by defendant DeBruce. Further, the Second Amended Complaint does not indicate that any notice of default and opportunity to cure was provided to defendant DeBruce by defendant SIRC or by plaintiffs. Some of the cars leased to defendant DeBruce by SIRC were RFMX cars that are identified as cars owned by plaintiffs. Prior to becoming aware of the instant lawsuit in 2001, defendant DeBruce was not aware that the RFMX cars were owned by plaintiffs, nor that defendant SIRC had a lease with plaintiffs. Plaintiffs never informed defendant DeBruce during the time that the RFMX cars were leased to defendant DeBruce that defendant DeBruce owed any obligations to plaintiffs under either the Caldwell–Baker/SIRC lease or the SIRC/DeBruce lease.

At defendant SIRC's request, in 2001, and prior to DeBruce's becoming a party to this lawsuit, all remaining RFMX cars leased to defendant DeBruce were replaced with substitute cars by defendant SIRC. After the substitution, the returned RFMX cars were accepted by plaintiffs, and neither defendant SIRC nor anyone else identified to defendant DeBruce any repairs or maintenance to the RFMX cars that defendant DeBruce had not performed. During the entire time that any RFMX cars were leased to DeBruce under the SIRC/DeBruce Lease, and to date, defendant SIRC provided no notice of default and opportunity to cure to defendant DeBruce. Defendant DeBruce timely made all payments under the SIRC/DeBruce Lease and plaintiffs never notified defendant DeBruce that it needed to make payments to plaintiffs rather than SIRC.

Plaintiffs' allegations with respect to defendant General Mills mirror those against defendant DeBruce. Plaintiffs claim that defendant General Mills agreed in its November 30, 1993 lease with SIRC to become a joint obligor with SIRC under the terms of the Caldwell–Baker/SIRC lease. Plaintiffs further state that they are third party beneficiaries of the SIRC/General Mills lease.

Plaintiffs state that defendant General Mills agreed in the SIRC/General Mills lease to become bound by the terms of the Caldwell–Baker/SIRC lease. In addition, plaintiffs claim defendant General Mills failed to fulfill the following duties under the SIRC/General Mills lease: (1) to indemnify, defend, and hold harmless Caldwell–Baker and any owner of the cars from certain obligations; (2) to name Caldwell–Baker and any owner of the cars as insureds; (3) to maintain and repair certain "Lessee Maintenance Items" on the subleased cars; (4) to return the cars free of certain damage; (5) that "[t]he Lessee's duties under the Lease were not per-formed by General Mills as set forth in CBC's Complaint against SIRC." Plaintiffs seek monetary damages, including attorney's fees. Further, plaintiffs request the court to enter a declaratory judgment that defendant General Mills is obligated to indemnify plaintiffs and defendant SIRC for claims arising out of the Caldwell–Baker/SIRC lease and the SIRC/General Mills lease.

Plaintiffs' Second Amended Complaint does not identify any insurance claims that were available to defendant General Mills and not presented, nor does the complaint specify any events or conditions for which insurance coverage would be appropriate. Furthermore, plaintiffs do not allege that any cars were tendered for which defendant SIRC required repair payments by defendant General Mills. Plaintiffs were not named in the SIRC/General Mills lease, and defendant General Mills was not named in the Caldwell–Baker/SIRC lease. Finally, defendant SIRC has not presented the court with complaints arising out of defendant General Mills's contractual performance of the SIRC/General Mills lease obligations.

In a prior order, this court denied defendant SIRC's Motion to Dismiss for Lack of Personal Jurisdiction (Mem. and Order, Sept. 28, 2001, at 7–8). In so doing, the court found SIRC had relevant contacts with the State of Kansas stemming from negotiations that took place by telephone, facsimile and mail to plaintiff Caldwell–Baker in Kansas, notwithstanding that neither defendant SIRC nor any of its agents physically entered the State of Kansas. (*Id.*) Further, the court found that the railcars at issue in the case were delivered to sublessors of defendant SIRC in the State of Kansas, even though defendant SIRC was not physically present at the delivery points in Kansas. (*Id.*). Plaintiffs·have not pled that any of the above

contacts apply to defendants Seiberlich, Parsons, Johnson, or Goodman in their individual capacities.

Defendants DeBruce, General Mills, SIRC LLC, Seiberlich, Parsons, Johnson, and Goodman were not mentioned in or named as parties to the Caldwell–Baker/SIRC lease. Defendants Seiberlich, Parsons, Johnson, and Goodman do not reside in the State of Kansas, have not traveled here in connection with or resulting from defendant SIRC's contractual relationship with plaintiffs, or in connection with any of the plaintiffs. Defendants Parsons, Johnson, and Goodman have not, in their individual capacities, negotiated, entered into or consummated a transaction on behalf of SIRC. Defendant Seiberlich has never been in the State of Kansas. Defendant Parsons has never spoken by telephone with any of the plaintiffs or their agents, and only one letter has ever been sent from defendant SIRC to plaintiffs under Parsons's signature. Furthermore, he has never traveled to the State of Kansas on SIRC business.

## II. Legal Standard for Motion to Dismiss

The court will dismiss a cause of action for failure to state a claim only when it appears beyond a doubt that the plaintiffs can prove no set of facts in support of the theory of recovery that would entitle him or her to relief, *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Maher v. Durango Metals, Inc.,* 144 F.3d 1302, 1304 (10th Cir.1998), or when an issue of law is dispositive. *Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, *Maher,* 144 F.3d at 1304, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). The issue in resolving a motion such as this is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

▪ Before analyzing the motions to dismiss, the court addresses an argument raised by plaintiffs in their replies to the pending motions to dismiss. Plaintiffs argue that because this court ruled that defendants DeBruce, General Mills, SIRC LLC, Seiberlich, Parsons, Johnson, and Goodman could be added as parties, this court already has determined that plaintiffs' Second Amended Complaint should survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). As defendants point out, this is an improper interpretation of the court's orders granting leave to amend. Federal Rule of Civil Procedure 15(a) states that, after a party has amended a pleading once as a matter of course, it may amend the pleading again after obtaining leave from the court, and that such leave "shall be freely granted when justice so requires." Amended pleadings that are clearly futile or would not withstand a motion to dismiss will be rejected. In granting leave to amend, the court made no finding that the Second Amended Complaint would survive a motion to dismiss. Such a finding cannot arise by negative implication, as plaintiffs argue.

## III. Choice of Law

▪ Defendants DeBruce and General Mills claim that the SIRC/DeBruce and SIRC/General Mills leases are governed by Illinois law pursuant to their identical choice of law provisions. *See* Def. DeBruce's Mtn., Ex. 1 at ¶ 18(i); Def. Gen. Mills's Mtn., Ex.1 at ¶ 18(h). Plaintiffs

contend that Kansas law should apply, because defendants DeBruce and General Mills agreed that plaintiffs' right to have Kansas law apply through the Caldwell–Baker/SIRC lease would supercede the choice of law provision in the SIRC/DeBruce and SIRC/General Mills leases. The court can only determine whether the SIRC/DeBruce and SIRC/General Mills leases subjected defendants DeBruce and General Mills to the provisions of the Caldwell–Baker/SIRC lease after the court has determined and applied the governing law. The court therefore must necessarily look to the choice of law provisions in the SIRC/DeBruce and SIRC/General Mills leases.

■ A federal court sitting in diversity must apply the substantive law of the state in which it sits, including the choice of law rules of that state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Kansas courts generally give effect to choice of law provisions if the forum selected bears a reasonable relation to the contract at issue. *Abbott v. Chem. Trust*, No. 01–2049–JWL, 2001 WL 492388, at *5 (D.Kan. Apr.26, 2001) (citation omitted). In the case at bar, Illinois bears a reasonable relation to the lease agreements because SIRC is an Illinois corporation. It is unclear from the documents before the court the location of the place of contracting or performance. The court will give effect to the choice of law provisions in the SIRC/DeBruce and SIRC/General Mills leases, and finds that Illinois law governs those leases.[3]

## IV. Contract Interpretation Standards

■ In construing a contract, the court must aim to find the intent of the parties. *DuQuoin Nat'l Bank v. Vergennes Equip., Inc.*, 234 Ill.App.3d 998, 175 Ill.Dec. 353, 599 N.E.2d 1367, 1371

(1992). To do so, the court "must look to the agreement as a whole, to its nature, purpose, and the subject matter with which it deals and, if ambiguous, to the circumstances under which it was made." *Id.* Further, words generally are to be given their usual and primary meaning at the time of the execution of the contract. *Id.* Courts are to apply a reasonable construction according to the intention of the parties, as opposed to an unreasonable construction. *Id.* Moreover, the court should give meaning and effect to each provision contained in the contract, and specific provisions will control over general ones. *Dolezal v. Plastic & Reconstructive Surgery*, 266 Ill.App.3d 1070, 204 Ill.Dec. 10, 640 N.E.2d 1359, 1366 (1994). Whether a contract is ambiguous is to be determined by the trial court as a matter of law. *DuQuoin*, 175 Ill.Dec. 353, 599 N.E.2d at 1371. "An ambiguity exists in a document if the words used can be interpreted in more than one sense or if the agreement is obscure through indefiniteness of expression or having a double meaning." *Id.* An unambiguous contract may be interpreted by the trial court as a matter of law. *Home Sav. Ass'n of Kan. City, F.A., v. State Bank of Woodstock*, 763 F.Supp. 292, 297 (N.D.Ill.1991).

■ Though a contract may incorporate by reference the language of another contract, "courts must be cautious in interpreting the scope of incorporation so as not to undermine the parties' intent." *Hallberg v. Gen. Motors Corp.*, No. 87 C 6478, 1989 WL 153340, at *5 (N.D.Ill. Nov.2, 1989) (applying Illinois law). Moreover, "where the extraneous writing is incorporated for a specific purpose, the writing will be incorporated only to the extent of the reference and for the specific purpose intended.... [T]o constitute part of

---

3. As plaintiffs point out, there are few substantive differences between Illinois and Kansas law regarding the contract principles at issue in this case.

the contract the reference must be clear and unequivocal." *Id.*

 Finally, the court notes that indemnity clauses are accorded strict construction against the indemnitee. *Id.; Fid. & Deposit Co. of Md. v. Rosenmutter,* 614 F.Supp. 348, 351 (N.D.Ill.1985) (applying Illinois law). Having set forth these principles of contract law, the court next turns to the merits of defendants DeBruce and General Mills's Motions to Dismiss or for Summary Judgment.

## V. Defendant DeBruce's Motion to Dismiss or for Summary Judgment[4]

Defendant DeBruce argues that dismissal is proper because plaintiffs cannot state a claim that defendant DeBruce breached a duty it owed to plaintiffs. As set forth below, the court grants defendant DeBruce's Motion to Dismiss.

## A. Plaintiffs' Claims Against Defendant DeBruce Arising out of Paragraph 10(a) of the DeBruce/SIRC Lease

 Plaintiffs' Second Amended Complaint alleges that defendant DeBruce agreed in its lease with defendant SIRC to become a joint obligor with SIRC under the terms of the Caldwell–Baker/SIRC lease. For support, plaintiffs point to paragraph 10(a) of the SIRC/DeBruce lease.[5]

Defendants argue that paragraph 10(a) of the SIRC/DeBruce lease is a subordination clause with regard to possession and use, rather than a guaranty, assignment, or assumption of SIRC's obligations. Defendant DeBruce points out that the paragraph is subtitled "Subordination: Use" and that it states, "[t]his Lease and Lessee's rights are subject and subordinate to the rights and remedies of any lender, owner, or other party which finances the cars." According to defendant DeBruce, the Black's Law Dictionary definitions of "subordination agreement" and "subordinate" indicate that the effect of this clause was to make defendant DeBruce's right to possession and use of the cars subject to the rights of the car owners and lenders. Further, defendant DeBruce points out that an interpretation of this language as a subordination clause is supported by the agreement's failure to specify defendant DeBruce's status under the Caldwell–Baker/SIRC lease-specifically, whether it is a lessee, guarantor, or assignee.

Plaintiffs, however, claim that this paragraph constituted defendant DeBruce's agreement to be bound by the Caldwell–Baker/SIRC lease. Specifically, plaintiffs claim that the sentence, "Lessee acknowl-

---

**4.** Plaintiffs have moved to strike defendant DeBruce's Reply to Plaintiffs' Response to DeBruce's Motion to Dismiss (Doc. 298) and defendant DeBruce's Reply to Plaintiffs' Response to DeBruce's Motion for Summary Judgment (Doc. 299), on the grounds that motions to dismiss and motions for summary judgment must be brought separately pursuant to District of Kansas Rule 56.1. The court finds that the local rules do not preclude the practice of bringing a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12 and a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 in the same pleading. Plaintiffs' motions to strike are denied.

**5.** Paragraph 10(a) of the SIRC/DeBruce lease states in full:

10. Possession and Use
(a) Subordination: Use. Lessee acknowledges that the Cars contained herein may be subject to certain covenants of Lessor's financial institutions or subject to the provisions of Lessor's lease with the actual owner (or agent for the owner) of the Cars, and Lessee agrees to be bound by same. This Lease and Lessee's rights are subject and subordinate to the rights and remedies of any lender, owner, or other party which finances the cars.
(Pls.' 2d Am. Compl., Ex. 8, at ¶ 10(a)).

edges that the Cars contained herein may be subject to certain covenants of Lessor's financial institutions or subject to the provisions of Lessor's lease with the actual owner (or agent for the owner) of the Cars, and Lessee agrees to be bound by same," obligated DeBruce to the terms of the Caldwell–Baker/SIRC lease.

Each party contends that the other's interpretation of the paragraph renders null the language relied upon by its opponent. Defendant DeBruce contends that in the sentence relied upon by plaintiffs, defendant DeBruce acknowledged that the cars may be subject to certain covenants relating to possession and use of the vehicles. Moreover, it argues that the last sentence, stating that the lessee's rights "are subject and subordinate to" the rights of the other parties, would be meaningless if defendant DeBruce had in fact agreed to undertake all of the obligations of the Caldwell–Baker/SIRC lease. Defendant also argues that plaintiff's interpretation of paragraph 10(a) would render multiple pages of the SIRC/DeBruce lease, which set forth a range of terms and conditions, meaningless if DeBruce merely undertook the obligations set forth in the Caldwell–Baker/SIRC lease or incorporated them by reference.

Plaintiffs, however, contend that the last sentence should control because while plaintiffs agreed in the first sentence to be bound by the Caldwell–Baker/SIRC lease, in the last sentence, defendant DeBruce agreed that its obligations under the Caldwell–Baker/SIRC lease would be subordinate to its obligations under the SIRC/DeBruce lease. Further, plaintiffs contend this paragraph incorporated by reference the Caldwell–Baker/SIRC lease, through the "bound by same" language.

Finally, defendant DeBruce claims that plaintiffs' interpretation of the SIRC/DeBruce lease is unreasonable, because under plaintiffs' interpretation, defendant

DeBruce would have agreed to be bound by any later lease agreements executed by SIRC, even if they were executed later in time and defendant DeBruce had no knowledge of the obligations involved (as is the case with the Caldwell–Baker/SIRC lease).

Applying the principles of contract construction enumerated above, the court finds that paragraph 10(a) is an unambiguous subordination agreement. The court believes that, when viewed in the context of the paragraph and the agreement as a whole, a finding that DeBruce agreed to be bound by certain covenants of leases executed by the lessor (SIRC) as relating to possession and use, rather than to the entire Caldwell–Baker/SIRC lease, is appropriate. The court must give effect to the heading of paragraph 10(a), as well as to the last sentence stating that defendant DeBruce's rights "are subject and subordinate to" those of SIRC as lessor. Even if, as plaintiffs argue, this sentence constituted an agreement by defendant DeBruce to a hierarchy of obligations as among the Caldwell–Baker/SIRC lease and the DeBruce/SIRC lease, the court is persuaded by defendant's argument that the rest of the DeBruce/SIRC lease's terms and conditions would therefore become meaningless. Further, the court does not believe the law supports a conclusion that paragraph 10(a) incorporated by reference any future lease agreement to be executed by SIRC, including the Caldwell–Baker/SIRC lease. Here, the plaintiffs urge the court to interpret paragraph 10(a) to incorporate by reference any later agreement executed by SIRC. As discussed above, courts must narrowly interpret the scope of incorporation and require a clear and unequivocal reference. *Hallberg*, 1989 WL 153340, at *5 (N.D.Ill. Nov.2, 1989). Moreover, any reference is far from clear and unequivocal, as the SIRC/DeBruce lease does not use terms in any form of the phrase "in-

corporate by reference" or discuss the specific agreements to be incorporated. Finally, the court believes that the interpretation advanced by defendant DeBruce is more reasonable because it favors a finding of a definite set of obligations over an indefinite set of obligations. It would be unreasonable to assume that the parties agreed to a series of indeterminate future obligations depending upon the language of future contracts executed by SIRC.

Consequently, the court finds as a matter of law that paragraph 10(a) of the DeBruce/SIRC lease did not obligate defendant DeBruce to become a joint obligor with defendant SIRC to the terms of the Caldwell–Baker/SIRC lease. The court therefore turns to plaintiffs' arguments that defendant DeBruce is obligated to indemnify SIRC pursuant to the terms of the Caldwell–Baker/SIRC lease.

**B. Plaintiffs' Claims Against Defendant DeBruce Arising out of Paragraphs 19 and 20 of the Caldwell–Baker/SIRC Lease**

Plaintiffs' Second Amended Complaint alleges that defendant DeBruce agreed to indemnify plaintiffs pursuant to paragraphs 19 and 20 of the Caldwell–Baker/SIRC lease. Paragraph 19 states, in relevant part, that "Lessee shall indemnify, defend and hold Lessor harmless from and against any loss, liability, claim, cost or expense including attorney's fees ... arising out of or in connection with the possession, leasing, subleasing, storage, use or return of any Car from the date of acceptance by Lessee to the date of return and acceptance by Lessor...." (Pls.' 2d Am. Compl., Ex. 2 at ¶ 19). Paragraph 20 states that:

Lessee may sublease the Cars provided that: (i) Lessee shall notify Lessor of any sublease and the terms thereof; (ii) Lessee shall continue to remain liable to Lessor under this Lease; (iii) any sublease shall contain language which makes such subleases subject and subordinate to this Lease and to the rights of financing parties described in Subsection 10(a); (iv) such sublease shall provide that the Cars will be used only within the boundaries of permitted use set forth in subsection 7(a) and in accordance with all of the terms and conditions set forth herein upon Lessee.

(*Id.* at ¶ 20).

Defendant DeBruce argues that these clauses do not contemplate an undertaking of obligations by defendant DeBruce, because the term "Lessee" is defined in the Caldwell–Baker/SIRC lease to mean SIRC. (*See id.* at 1).

Plaintiffs counter by arguing that there can be multiple promissors of the same performance and that the promise may be made in multiple documents. Plaintiffs' argument, though a true statement of the law, is not helpful to the court in determining whether defendant DeBruce agreed to be bound by the terms of the Caldwell–Baker/SIRC lease. Plaintiffs appear to state that defendant DeBruce did not make the promise to perform duties pursuant to the Caldwell–Baker/SIRC lease within that document itself. (Pls.' Mem. in Opp. at 11). The court already has found that paragraph 10(a) of the DeBruce/SIRC lease did not obligate defendant DeBruce to become a joint obligor with defendant SIRC to the terms of the Caldwell–Baker/SIRC lease. Because defendant DeBruce was not a party to the Caldwell–Baker/SIRC lease and did not agree to become an obligor to that agreement, the court finds that plaintiffs' claims against defendant DeBruce arising out of Paragraphs 19 and 20 of the Caldwell–Baker/SIRC lease must fail as a matter of law.

## C. Plaintiffs' Claims Against Defendant DeBruce Arising out of Plaintiffs' Alleged Status as a Third Party Beneficiary of the SIRC/DeBruce Lease

Before addressing plaintiffs' argument, the court brings to the parties' attention a concern raised in defendant DeBruce and in defendants Parsons, Johnson, and Goodman's motions to dismiss. Plaintiffs appear to have served two different versions of the Second Amended Complaint. Only the Second Amended Complaint, which was attached to the motion for leave to amend and which was file-stamped following the entry of the court's October 5, 2001 order granting leave to amend, is properly before the court (Doc. 226). While this authorized Second Amended Complaint has 421 paragraphs and is 119 pages long, the other document (Doc. 209) has 423 paragraphs and is 120 pages long. This circumstance causes the court concern, as any allegations raised in the 423 paragraph "Second Amended Complaint" are not properly before the court.

■ Specifically, the allegation that plaintiffs were third party beneficiaries of the SIRC/DeBruce or SIRC/General Mills leases was not raised in the Second Amended Complaint that is properly before the court (Doc. 226). Even if plaintiffs' allegation was properly before the court, however, the court finds it to be without merit. Plaintiffs claim that defendant DeBruce breached duties owed to them due to their status as third party beneficiaries under the SIRC/DeBruce sublease. "Whether a party is a third-party beneficiary to a contract depends upon the intent of the parties and must therefore be determined on a case-by-case basis ... the liability of the promisor to the third party must 'affirmatively appear from the language of the instrument when properly interpreted and construed.'" *Georgia–Pacific Corp. v. First Wisc. Fin.*

*Corp.*, 625 F.Supp. 108, 119 (N.D.Ill.1985) (applying Illinois law). In this case, a consideration of the entire contract does not lead the court to conclude that plaintiffs were intended beneficiaries of the SIRC/DeBruce lease. The court does not find that Articles 10, 15 (insurance), and 17 (indemnification) provide affirmative language sufficient to establish plaintiffs' status as third party beneficiaries as a matter of law.

## D. Plaintiffs' Alleged Failure to Provide Notice of Default

■ Defendant DeBruce argues that the SIRC/DeBruce lease provides that default can occur only upon a specified series of events that include notice and an opportunity to cure by plaintiffs to defendant DeBruce. (Pls.' 2d Am. Compl. at ¶ 11). The contract further provides for remedies for the lessor in the event of default. Defendant DeBruce states that it has not received notice or an opportunity to cure, and plaintiffs do not controvert this fact. Plaintiffs' statement that serving plaintiffs with the complaint constituted notice as required by the contract indicates that no notice and opportunity to cure was provided. Plaintiffs argue that the remedies set forth in the SIRC/DeBruce lease were not exclusive; therefore, notice was not required. However, to sue for a breach of contract, it is clear that plaintiffs must allege that defendant DeBruce defaulted on its obligations. The contract's provision for specific terms regarding default cannot be ignored. Even accepting as true all well-pleaded facts, the court finds that plaintiffs have not alleged facts to establish that defendant DeBruce defaulted on its obligations as provided in the contract. In other words, viewing the facts most favorable to plaintiffs as the nonmoving party, the court must conclude that there is no set of facts under which plaintiffs can state a claim. Accordingly,

the court finds that dismissal of Plaintiffs' Second Amended Complaint as against defendant DeBruce pursuant to Federal Rule of Civil Procedure 12(b)(6) is warranted as a matter of law. Defendant DeBruce's motion to dismiss is granted

## VI. Defendant General Mills's Motion to Dismiss

Defendant General Mills requests that the court dismiss the complaint for failure to state a claim for which relief could be granted. As set forth below, the court grants defendant General Mills's Motion to Dismiss.

### A. Plaintiffs' Claims Arising out of Paragraph 10(a) of the SIRC/General Mills Lease

Paragraph 10(a) of the SIRC/General Mills lease is identical to paragraph 10(a) of the SIRC/DeBruce lease. Therefore, like defendant DeBruce, defendant General Mills argues that plaintiffs cannot state a claim for breach of contract because they were neither parties nor third party beneficiaries to the SIRC/General Mills lease. Defendant General Mills states that paragraph 10(a) of the General Mills lease [6] is a subordination clause, rather than an agreement that General Mills would oblige itself jointly with defendant SIRC to fulfill duties under the Caldwell–Baker/SIRC lease. Defendant General Mills points to the headings of paragraph 10(a), as "Possession and Use" and "Subordination: Use" as evincing the parties' intent to create a subordination clause. Furthermore, defendant General Mills identifies the preceding sentence in the

lease as providing further support for an interpretation that paragraph 10(a) is a subordination clause. That sentence states, "[p]rovided such provisions do not require performance by Lessee beyond that provided hereunder or impose greater or more obligations upon Lessee than required hereunder, Lessee specifically acknowledges the existence of these provisions and agrees to be bound by same."

Plaintiffs argue that because the SIRC/General Mills lease was amended after the Caldwell–Baker/SIRC lease was signed, an agreement by defendant General Mills to be bound by the terms of the Caldwell–Baker/SIRC lease was within the contemplation of defendants SIRC and General Mills. Defendant General Mills, however, points out that neither of the amendments cited by plaintiffs have the effect of modifying defendant General Mills's obligations to defendant SIRC or other parties.

The court applies the principles of contract construction enumerated above. For the same reasons the court found paragraph 10(a) of the SIRC/DeBruce lease to be a subordination agreement, the court finds that paragraph 10(a) of the SIRC/General Mills lease also is an unambiguous subordination agreement. As previously set forth, the court believes that, when viewed in the context of the paragraph and the agreement as a whole, a finding that defendant General Mills agreed to be bound by certain covenants of leases executed by the lessor (SIRC) as relating to possession and use, rather than to the entire Cald-

---

**6.** Paragraph 10(a) of the SIRC/General Mills lease states in full:

 10 Possession and Use.

 (a) Subordination: Use. Lessee acknowledges that the Cars contained herein may be subject to certain covenants of Lessor's financial institutions or subject to the provisions of Lessor's lease with the actual own-

er(or agent for the owner) of the Cars, and Lessee agrees to be bound by same. This Lea se and Lessee's rights are subject and subordinate to the rights and remedies of any lender, owner, or other party which finances the cars.

(Pls.' 2d Am. Compl., Ex. 9, at ¶ 10(a)).

well–Baker/SIRC lease, is appropriate. The court must give effect to the heading of paragraph 10(a), as well as to the last sentence stating that defendant General Mills's rights "are subject and subordinate to" those of SIRC as lessor. Even if, as plaintiffs argue, this sentence constituted an agreement by defendant General Mills to a hierarchy of obligations as among the Caldwell–Baker/SIRC lease and the SIRC/General Mills lease, the court is persuaded by defendant's argument that the rest of the SIRC/General Mills lease's terms and conditions would therefore become meaningless. Further, the court does not believe the law supports a conclusion that paragraph 10(a) incorporated by reference any future lease agreement to be executed by SIRC, including the Caldwell–Baker/SIRC lease. Here, the plaintiffs wish the court to interpret paragraph 10(a) to incorporate by reference any later agreement executed by SIRC. As discussed above, courts must narrowly interpret the scope of incorporation and must require a clear and unequivocal reference. *Hallberg,* 1989 WL 153340, at *5. Moreover, any reference is far from clear and unequivocal, as the SIRC/General Mills lease does not use terms in any form of the phrase "incorporate by reference" or discuss the specific agreements to be incorporated. In addition, the court does not find that the amendments to the SIRC/General Mills lease indicate that defendant General Mills altered its obligations to defendant SIRC or to any other party. Finally, the court believes that the interpretation advanced by defendant General Mills is more reasonable because it favors a finding of a definite set of obligations over an indefinite set of obligations. It would be unreasonable to assume that defendant General Mills agreed to undertake a series of indeterminate future obligations depend-ing upon the language of future contracts executed by SIRC.

Consequently, the court finds as a matter of law that paragraph 10(a) of the SIRC/General Mills lease did not obligate defendant General Mills to become a joint obligor with defendant SIRC to the terms of the Caldwell–Baker/SIRC lease. The court therefore turns to plaintiffs' arguments that defendant General Mills is liable to plaintiffs due to their status as third party beneficiaries of the SIRC/General Mills lease.

## B. Plaintiffs' Claims Against Defendant General Mills Arising out of Plaintiffs' Alleged Status as a Third Party Beneficiaries of the SIRC/General Mills Lease

The court again expresses its concern that the allegation that plaintiffs were third party beneficiaries of the SIRC/De-Bruce or SIRC/General Mills leases was not raised in the Second Amended Complaint in the form in which the court granted defendants leave to amend (Doc. 226, which was file-stamped following the entry of the court's October 5, 2001 order granting leave to amend, Doc. 225). Only the version of the complaint which was ordered file-stamped by the court is properly before the court at this time.

Even if plaintiffs' argument was properly before the court, however, the court finds it to be without merit. Plaintiffs claim that defendant General Mills breached duties owed to them due to their status as third party beneficiaries under the SIRC/General Mills sublease. As discussed above, to find third party beneficiary status, "the liability of the promisor to the third party must 'affirmatively appear from the language of the instrument when properly interpreted and construed.'" *Georgia–Pacific Corp.,* 625 F.Supp. at 119. Like the SIRC/DeBruce lease, the court

finds that a consideration of the entire contract does not lead the court to conclude that plaintiffs were intended beneficiaries of the SIRC/General Mills lease. The court finds that Articles 10, 15 (insurance), and 17 (indemnification) do not provide affirmative language sufficient to establish plaintiffs' status as third party beneficiaries as a matter of law.

Accordingly, the court finds that dismissal of Plaintiffs' Second Amended Complaint as against defendant General Mills pursuant to Federal Rule of Civil Procedure 12(b)(6) is warranted as a matter of law. Viewing the facts most favorable to plaintiffs as the nonmoving party, the court must conclude that there is no set of facts under which plaintiffs can state a claim. Defendant General Mills's Motion to Dismiss is granted. Defendant General Mills's Motion for Summary Judgment is dismissed as moot. The court turns to defendants Parsons, Johnson, Goodman, and Seiberlich's Motions to Dismiss.

## VII. Defendant SIRC LLC's Motion to Dismiss, Defendant Michele Seiberlich's Motion to Dismiss, and Defendants Parsons, Johnson, and Goodman's Motion to Dismiss[7]

Defendants SIRC LLC, Seiberlich, Parsons, Johnson, and Goodman move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Defendants state the court lacks personal jurisdiction over them pursuant to Kansas's long-arm statute and the Due Process Clause of the Fourteenth Amendment.

In the alternative, defendants SIRC LLC, Seiberlich, Parsons, Johnson, and Goodman move the court to dismiss on the grounds that plaintiffs have failed to state a claim upon which relief can be granted.

Specifically, defendant Seiberlich contends that plaintiffs' refusal to designate a place for defendant SIRC to return the leased railcars at issue in this case means that plaintiffs' claim of conversion against her must fail as a matter of law. Defendants SIRC LLC, Parsons, Johnson, and Goodman claim that plaintiffs' cause of action for fraud against them also fails to state a claim for which relief can be granted. As set forth below, the court grants defendants' SIRC LLC, Seiberlich, Parsons, Johnson, and Goodman's Motions to Dismiss.

### A. Waiver of Personal Jurisdiction

Before discussing the personal jurisdictional issues on their merits, the court addresses an argument raised by plaintiffs in their response to defendants Parsons, Johnson, Goodman, Seiberlich, and SIRC LLC's Motions to Dismiss (Doc. 348). Plaintiffs argue that the defendants waived their right to move for dismissal on the grounds that the court lacks personal jurisdiction because defendants filed a pre-answer motion for more definite statement pursuant to Federal Rule of Civil Procedure 12(e). Defendants SIRC LLC, Parsons, Johnson, Goodman, and Seiberlich moved for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) as to which version of plaintiffs' Second Amended Complaint is properly before the court (Docs.249, 281). However, defendants SIRC LLC, Parsons, Johnson, Goodman, and Seiberlich withdrew their motions for more definite statement after plaintiffs responded to them, but prior to filing the pending motions to dismiss (Docs.333, 334).

Federal Rule of Civil Procedure 12(h)(1) provides that four defenses, including the

---

7. Because plaintiffs have responded in one pleading to the jurisdictional issues contained in both Motions to Dismiss in one pleading, for ease of reference, the court will consider the Motions to Dismiss at the same time.

defense of lack of personal jurisdiction, are waived "(A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof...." Fed.R.Civ.P. 12(h)(1). Rule 12(g) provides that "[a] party who makes a motion under this rule may join with it any other motions herein provided for an then available to the party. If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof...."

A substantial number of courts have held that once a party has moved for a more definite statement pursuant to Rule 12(e), that party may not later assert by motion "a Rule 12(b) defense that was available at the time of the initial motion." *E.g., Clark v. Assocs. Commercial Corp.,* 149 F.R.D. 629, 632–33 (D.Kan.1993). The defense of lack of personal jurisdiction was available to defendants at the time they made their Rule 12(e) motions. The multiple versions of the Second Amended Complaint are not vastly unlike; nor do they differ in a manner that would have created a question whether defendants could have pled a lack of personal jurisdiction.

■ This court therefore must determine whether the defendants' withdrawal of their motions for more definite statement should prevent application of waiver under Rule 12(h). Withdrawal of a motion has a practical effect as if the party had never brought the motion. *Remley v. Lockheed Martin Corp.,* No. C00–2495CRB, 2001 WL 681257, at *3 (N.D.Cal. June 4, 2001). Furthermore, several courts have held that a defendant may amend a pending Rule 12 motion to include a waivable defense provided the amendment is made before there is a hearing or order by the district court. *Id.* (citing cases); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1389 (1990). The court finds that because defendants withdrew their motions for more definite statement, they did not waive their ability to move to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(h).

### B. Personal Jurisdiction Standard

■ A plaintiff opposing a motion to dismiss for lack of personal jurisdiction bears the burden of establishing that the exercise of personal jurisdiction over the defendant is proper. *Kuenzle v. HTM Sport–Und Freizeitgerate AG,* 102 F.3d 453, 456 (10th Cir.1996). If the motion to dismiss is submitted prior to trial on the basis of affidavits and other written materials, the plaintiffs need only make a prima facie showing to avoid dismissal for lack of personal jurisdiction. *Id.* Although the plaintiff will be required to prove the factual basis for jurisdiction by a preponderance of the evidence at trial, on a pre-trial motion to dismiss, all factual disputes are resolved in favor of the plaintiff. *Id.* If the plaintiff makes the required prima facie showing that personal jurisdiction exists, "a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *OMI Holdings, Inc. v. Royal Ins. Co. of Can.,* 149 F.3d 1086, 1091 (10th Cir.1998) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). In diversity actions, personal jurisdiction over a nonresident defendant is determined by the law of the forum state. *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Co-op.,* 17 F.3d 1302, 1304 (10th Cir.1994) (citing Federal Rule of Civil Procedure 4(e)).

The court must consider whether its jurisdiction is appropriate under the long-arm statute of the forum state and the Due Process Clause. *Envtl. Ventures Inc. v. Alda Servs. Corp.*, 868 P.2d 540, 543, 19 Kan.App.2d 292, 295 (1994). Kansas Statutes Annotated § 60–308(b), the applicable long-arm statute, provides in part that "[a]ny person ... who in person or through an agent or instrumentality" transacts "any business" within the state or "enter[s] into an express or implied contract by mail or otherwise with a resident of the state to be performed in whole or in part by either party in this state" submits to the jurisdiction of Kansas courts. Because the Kansas long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process," the court may proceed directly to the Due Process Clause analysis. *Federated Rural Elec. Ins. Corp.*, 17 F.3d at 1305.

■ "The 'minimum contacts' standard may be met in one of two ways." *OMI Holdings*, 149 F.3d at 1090. First, a court may exercise specific jurisdiction over a nonresident defendant where "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or are related to those activities." *Id.* at 1090–91 (quoting *Burger King*, 471 U.S. at 472, 105 S.Ct. 2174; *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)). Where no nexus is alleged to exist between the defendant's forum-related activities and the injury sustained, a court may nevertheless exercise "general" jurisdiction over a nonresident defendant whose contacts with the forum state are so pervasive that personal jurisdiction is conferred by the "continuous and systematic" nature of the defendant's in-state activities. *Id.* Here, plaintiffs have not alleged that the defendants can properly be subjected to the general jurisdic-

tion of the court. Accordingly, the court addresses the issue of specific jurisdiction only.

■ The specific jurisdiction analysis is two-fold. First, the court "must determine whether the defendant[s] have such minimum contacts with the forum state 'that [they] should reasonably anticipate being haled into court there.'" *OMI Holdings, Inc.*, 149 F.3d at 1091 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). Accordingly, the court "must determine whether the defendant purposefully directed its activities at residents of the forum, and whether the plaintiffs' claim arises out of or results from 'actions by the defendant himself that create a substantial connection with the forum state.'" *Id.* (quoting *Burger King*, 471 U.S. at 472, 105 S.Ct. 2174). Second, if the court finds the defendant's actions gave rise to sufficient minimum contacts, the court must consider whether the exercise of personal jurisdiction over the defendant would offend "traditional notions of fair play and substantial justice." *Id.* (quoting *Asahi*, 480 U.S. at 113, 107 S.Ct. 1026).

### C. Personal Jurisdiction Analysis

■ First, the court must examine whether plaintiffs have presented evidence that defendants SIRC LLC, Seiberlich, Parsons, Johnson, and Goodman have purposefully availed themselves of the privilege of conducting business in the State of Kansas. "Purposeful availment requires actions by the defendant which 'create a substantial connection with the forum state.'" *Id.*

There are no facts before the court indicating that defendants SIRC LLC, Seiberlich, Parsons, Johnson, and Goodman shared in the minimum contacts that were identified by the court as sufficient to deny

defendant SIRC's motion to dismiss for lack of jurisdiction.

■ Defendant SIRC LLC has no office in, and does not conduct business in, the State of Kansas. Plaintiffs allege no facts to indicate that defendant SIRC LLC had the minimum contacts with the State of Kansas needed to support a finding of personal jurisdiction. Instead, plaintiffs appear to allege that defendant SIRC LLC is an alter ego of defendant SIRC. Plaintiffs state that SIRC LLC is "an affiliate or subsidiary" of SIRC and that SIRC LLC and SIRC "agreed to engage in specific business enterprises," "associated themselves as joint adventurers," had "a community of interest in their enterprises," and had "equal authority and rights to direct the movements and conduct of each other, and they shared profits and losses." (2d Am. Compl. at ¶ 355). In their response, plaintiffs do not address defendant's argument that SIRC LLC is not an alter ego of SIRC, and instead claim that SIRC LLC is vicariously liable for defendant Parsons's actions, because he is an officer in SIRC LLC.[8] However, as defendant points out, plaintiffs do not set forth facts to support the allegation that defendant Parsons was acting in his capacity as an agent of SIRC LLC rather than SIRC at the time he engaged in the complained of conduct. Even if plaintiff had made such allegations, as set forth below, the record before the court is insufficient to support a finding that the court may exercise personal jurisdiction over Parsons. Furthermore, plaintiff cannot state a claim for fraud or misrepresentation against defendant Parsons. The court finds that even if defendant SIRC LLC could be "vicariously liable" for the torts of its manager, SIRC LLC could not be liable for the acts of defendant Parsons under these facts. Further, the court finds that plaintiffs' attempt to plead that SIRC LLC is liable due to an alleged partnership with SIRC and Parsons must fail. There is no showing of a partnership agreement or any other contract under which SIRC LLC agreed to assume the responsibilities in relation to SIRC that are at issue in this case. Accordingly, the court grants defendant SIRC LLC's motion to dismiss.

■ Defendant Seiberlich has not traveled to Kansas in connection with or resulting from defendant SIRC's contractual relationship with plaintiffs, or in connection with any of the plaintiffs. Plaintiffs attach correspondence by defendants Seiberlich, Parsons, Johnson, and Goodman signed in their official capacities as officers of SIRC. Plaintiffs contend, in general terms, that a sufficient connection exists between defendants Seiberlich, Parsons, Johnson, and Goodman with the State of Kansas because they were involved in "authorizing, directing, advising, encouraging, or assisting" in torts allegedly committed by SIRC (Pls. Mem. in Opp. (Doc. 380) at 6). Further, plaintiffs state that defendants Seiberlich, Parsons, Johnson, and Goodman had "direct personal involvement . . . in the decisions and actions which [are] causally related to plaintiffs' injury." Plaintiffs also state that "the facts supporting jurisdiction over SIRC" can "be considered" in determining whether defendants Seiberlich, Parsons, Johnson, and Goodman have the necessary minimum contacts.

■ Defendants Seiberlich, Parsons, Johnson, and Goodman argue, however, that the actions in which they engaged in their capacity as corporate

---

**8.** Because plaintiffs do not address defendants' argument that SIRC LLC is not an alter ego of SIRC, and because there are, as set forth below, other grounds upon which the court may grant defendant SIRC LLC's motion to dismiss, the court declines to address the issue whether SIRC LLC is an alter ego of SIRC.

officers of SIRC cannot give rise to minimum contacts pursuant to the fiduciary shield doctrine. "[T]he Tenth Circuit has accepted the use of the fiduciary shield doctrine for individual corporate officers defending a tort claim where they have no personal contacts, independent of their representative contacts, with the forum and where there is no factual basis to pierce the corporate veil." *Traffas v. Bridge Capital Corp.*, No. 90–1304–C, 1990 WL 251740, at *6 (D.Kan. Dec.3, 1990). "An individual's actions, solely in the capacity as a corporate officer, [do] not create personal jurisdiction over that individual even though the state may have personal jurisdiction over the corporation." *Knuth v. Lutheran Church Mo. Synod*, 643 F.Supp. 444, 446 (D.Kan.1986). Accordingly, "[j]urisdiction over individual officers of a corporation must be based on their personal, not representative, contacts with the forum." *Traffas*, 1990 WL 251740, at *3. The policy interest served by the fiduciary shield doctrine is "to prevent the unfairness of an individual being forced to defend a suit in a forum when his only contacts there were made for the benefit of his employer and not himself." *Id.*

Plaintiffs state that the alleged commission by defendants Seiberlich, Parsons, Johnson, and Goodman of torts against SIRC indicates that a finding of minimum contacts is proper under *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). However, the Tenth Circuit's review of post-*Calder* decisions

> reveals that the mere allegation that an out-of-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts. Instead, in order to resolve the jurisdictional ques-

tion, a court must undertake a particularized inquiry as to the extent to which the defendant has purposefully availed itself of the benefits of the forum's laws. *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1079 (10th Cir.1995).

The record before the court indicates that application of the fiduciary shield doctrine is proper. All of the contacts plaintiffs identify arose while defendants Seiberlich, Parsons, Johnson, and Goodman were acting in their official capacities as officers of SIRC. The court thus concludes that defendants Seiberlich, Parsons, Johnson, and Goodman lack minimum contacts sufficient to justify this court's exercise of personal jurisdiction pursuant to the Due Process Clause and the Kansas long-arm statute. The court therefore does not review the second prong of the due process analysis, whether exercising personal jurisdiction over these defendants would offend traditional notions of fair play and substantial justice.

Even if the court could exercise personal jurisdiction over these defendants, plaintiffs' claim of conversion against defendant Seiberlich and fraud claim against defendants SIRC LLC, Parsons, Johnson, and Goodman fails as a matter of law.

### D. Conversion Claim Against Defendant Seiberlich

▇▇▇ Plaintiffs claim that defendant Seiberlich improperly exercised dominion and control over cars that were subject to the Caldwell–Baker/SIRC lease and interfered with the operation, movement, and control of the cars when she had no right to do so.

▇▇▇ To prevail on a claim for conversion, a plaintiff must plead and prove the "unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another to the

exclusion of the other's rights." *Moore v. State Bank of Burden,* 240 Kan. 382, 386, 729 P.2d 1205, 1210 (1986). Defendant Seiberlich states that pursuant to the Caldwell–Baker/SIRC lease, SIRC had contractual authorization to possess the railcars until plaintiff Caldwell–Baker gave instructions for a return location, which plaintiff Caldwell–Baker refused to do.[9]

Plaintiffs state that paragraph 13 of the Caldwell–Baker/SIRC lease operated to terminate defendant SIRC's right to possess the cars after default.[10] Plaintiffs further argue that although paragraph 14 specified that upon expiration of the lease, SIRC was obligated to return the cars to Caldwell–Baker at a point selected by Caldwell–Baker, this provision did not create a condition precedent.

The court finds as a matter of law that defendant Seiberlich did not improperly exercise dominion and control over the cars by finding a storage location for the cars. There is no showing in the record that plaintiffs were unable to retrieve the cars from defendant Seiberlich. Further, plaintiffs admit that paragraph 14(a) did impose an obligation upon plaintiffs to designate a drop-off location. Considering all facts in the light most positive to plaintiffs as the non-moving party, the court believes that no reasonable jury could find that plaintiffs can state a claim for the tort of conversion under these facts. Defendant Seiberlich's Motion to Dismiss is granted.[11]

## E. Fraud Claim Against Defendants SIRC LLC, Parsons, Johnson, and Goodman

▇▇▇▇▇ Defendants state that plaintiffs' allegation of fraud fails to state a claim for which relief can be granted, because plaintiffs have not alleged that defendants SIRC LLC, Parsons, Johnson, and Goodman had a duty in their individual capacities to disclose SIRC's financial position. Under Kansas law, the elements of a claim of fraud by silence include: (1) that defendant had knowledge of material facts which plaintiff did not have and which plaintiff could not have discovered by exercise of reasonable diligence; (2) that defendant was under an obligation to communicate the material facts to the plaintiff. *OMI Holdings, Inc. v. Howell,* 918 P.2d 1274, 1299, 260 Kan. 305, 344–45 (1996). "Suppression of a material fact is not fraudulent unless the silent party is under some legal obligation to disclose."

---

9. The Caldwell–Baker/SIRC lease stated that regarding return of the railcars leased thereunder upon the Agreement's termination, "[u]pon the expiration or other termination of this Lease with respect to any Car, Lessee at its expense, shall return such Car to Lessor at such shop, storage yard, terminal facility or other interchange point designated by Lessor (the 'Return Location') (Pls.' 2d Am. Compl. Ex. 2, at ¶ 14). Article 14(c), which includes a subtitle, 'Holdover Rent,' states that 'Nothing in this Section shall give Lessee the right to retain possession of any Car after expiration or other termination of this Lease with respect to such car.' " (Pls.' 2d Am. Compl. Ex. 2, at ¶ 14(c)).

10. The court wishes to point out to the parties that the multi-pleading response by plaintiffs to defendant Seiberlich and defendants Parsons, Johnson, and Goodman's motions to dismiss has unduly complicated the docketing of this case. Plaintiffs respond to defendant Seiberlich's motion alone with three pleadings: one addressing the personal jurisdiction waiver issue (Doc. 348), one addressing the issue of personal jurisdiction in general (Doc. 380, which was filed 13 days after Docs. 348 and 349), and one addressing the conversion and trespass to chattels claims (Doc. 349).

11. The court rejects plaintiffs' argument that because defendants Seiberlich, Parsons, Johnson, and Goodman have attached affidavits outside the pleadings, the court must convert their motions to dismiss into motions for summary judgment. Because the court has not relied on the extraneous affidavits in its order, conversion to a summary judgment motion is not required.

*Flight Concepts Ltd. P'ship v. Boeing Co.,* 38 F.3d 1152, 1158 (10th Cir.1994) (citation omitted).[12]

Plaintiffs assert that Article 16 of the Caldwell–Baker/SIRC lease gave rise to an obligation on the part of defendant SIRC to disclose its financial health to plaintiff Caldwell–Baker.[13] Defendants Parsons, Johnson, and Goodman, however, argue that even if plaintiffs can prove that defendant SIRC breached this duty,[14] they are not liable because they owed no duty to plaintiffs in their individual capacities. Defendant SIRC LLC states that it owed no duty to plaintiffs because it was not a party to the Caldwell–Baker/SIRC lease. As defendants SIRC LLC, Parsons, Johnson, and Goodman point out, they are not named in, and were not parties to, the Caldwell–Baker/SIRC lease.

■ Moreover, defendants argue that plaintiffs have not pled that defendants had a fiduciary relationship to plaintiffs. "A fiduciary relationship imparts a position of peculiar confidence placed by one individual in another. . . . A fiduciary relationship may arise from the facts and circumstances of a relationship, but because the fiduciary assumes additional responsibilities within the relationship, fiduciary assumes additional responsibilities within the relationship, the role cannot be established inadvertently . . . Under Kansas law, one must consciously assume the responsibilities of a fiduciary." *Flight Concepts Lim.*

*P'ship v. Boeing Co.,* 38 F.3d 1152 (10th Cir.1994) (citations omitted). In the case at bar, there is no showing that defendants SIRC LLC, Parsons, Johnson, and Goodman assumed additional responsibilities to plaintiffs in the course of the parties' lease relationship.

■ Plaintiffs are correct in their statement that "a corporate officer or director, actively participating in the fraud practiced on behalf of a corporation, cannot escape personal liability on the ground that he was acting for the corporation or that the corporation obtained the benefit therefrom." *FDIC v. Hudson,* 758 F.Supp. 663, 670 (D.Kan.1991) (citing *Lentz Plumbing Co. v. Fee,* 235 Kan. 266, 270, 679 P.2d 736, 739 (1984)). However, in the case at bar, there is no showing that defendants obtained a personal benefit from any alleged fraud in the case, unlike cases in which courts have found corporate officers liable for fraud committed in the scope of their employment. *See, e.g., Hudson,* 758 F.Supp. at 670. Moreover, as discussed above, fraud can only exist if defendants were under a legal duty to disclose the information.

The court finds that while defendant SIRC may have had a duty to disclose information pursuant to Article 16, this duty cannot be imputed to defendants Parsons, Johnson, and Goodman in their individual capacities. In addition, there is no

12. As the court held in its September 28, 2001 Memorandum and Order, Kansas law applies to the Caldwell–Baker/SIRC lease.

13. Article 16 states:

Lessee shall permit Lessor reasonable access to Lessee's property during normal business hours to examine the Cars or Lessee's records relating to the Cars. Lessor shall provide Lessee at lest twenty-four (24) hours prior notice of inspection. Lessee shall, within ninety (90) days after the close of its fiscal year during the initial term and

any renewal term of this Lease, provide Lessor with Lessee's balance sheet and profit and loss statement certified by Lessee's chief financial officer. Such financial statements may be disclosed to Lessor's lenders and Lessor's Certified Public Accountant.

(Pls.'s 2d Am. Compl. at ¶ 16).

14. The court declines to find at this time whether defendant SIRC breached a duty to plaintiffs to disclose its financial position, as the liability of SIRC as an entity is not before the court in this pending motion.

showing that defendants SIRC LLC, Parsons, Johnson, and Goodman owed plaintiffs a duty to disclose the financial information at issue pursuant to a fiduciary relationship or any other duty in their individual capacities. Accordingly, the court grants defendants SIRC LLC, Parsons, Johnson, and Goodman's Motion to Dismiss.[15]

## VII. Order

IT IS THEREFORE ORDERED that defendant DeBruce Grain, Inc.'s Motion to Dismiss or for Summary Judgment (Doc. 270) is granted.

IT IS FURTHER ORDERED THAT defendant General Mills's Motion to Dismiss (Doc. 303) is granted. Defendant General Mills's Motion for Summary Judgment (Doc. 365) is moot.

IT IS FURTHER ORDERED THAT defendant Michele Seiberlich's Motion to Dismiss (Doc. 335) is granted.

IT IS FURTHER ORDERED THAT defendant SIRC LLC's Motion to Dismiss (Doc. 337) is granted.

IT IS FURTHER ORDERED THAT defendants Fred L. Parsons, Kurt E. Johnson, and Gary J. Goodman's Motion to Dismiss (Doc. 339) is granted.

IT IS FURTHER ORDERED THAT plaintiffs' Motion to Strike Defendant DeBruce's Reply to Plaintiffs' Response to DeBruce's Motion to Dismiss (Doc. 298) and plaintiffs' Motion to Strike Defendant DeBruce's Reply to Plaintiffs' Response to DeBruce's Motion for Summary Judgment (Doc. 299) are denied.

IT IS FURTHER ORDERED THAT plaintiffs' Motion for Partial Summary Judgment (Doc. 14) against defendant SIRC, and plaintiffs' Motions to Strike (Docs. 378 and 381), are denied as moot without prejudice to be reasserted, if at all, only if and when the bankruptcy court allows plaintiffs to continue to pursue their claims against defendant SIRC.

15. The court notes an additional basis upon which to dismiss plaintiffs' fraud claim. In the Second Amended Complaint, plaintiffs have failed to allege fraud with sufficient particularity. Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). To plead fraud with sufficient particularity, the plaintiffs "must describe with specificity 'the circumstances constituting the fraud, including such matters as the time, place, and content of the false representations, as well as the identity of the person making the representation and what was obtained and given thereby.'" *Sunbird Air Servs., Inc. v. Beech Aircraft Corp.*, 789 F.Supp. 364, 366 (D.Kan. 1992). As defendants point out, plaintiffs' Second Amended Complaint contains many allegations that between certain years, defendants "concealed from" plaintiffs the financial condition of SIRC. The court finds that plaintiffs have not pled fraud with sufficient particularity pursuant to Federal Rule of Civil Procedure 9(b). The content of the allegedly false representations cannot be discerned from the record.